UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:23-cv-01041-WFJ-AAS

JOSHUA VASQUEZ,

    Plaintiff,

v.

DIRECT HOME LOGISTICS INC., and
MICHAEL F. ELDRIDGE,

    Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 31, 2023, Plaintiff filed a Complaint against Defendants, Direct Home Logistics Inc., and Michael F. Eldridge, (collectively "Defendants" or individually "Direct Home" and "Eldridge") for violating 29 U.S.C. § 207, Fair Labor Standards Act of 1938 ("FLSA"), for Defendant's failure to properly compensate Plaintiff for his overtime hours worked.

On May 11, 2023, Defendants filed a Notice of Removal pursuant to and in compliance with 28 U.S.C. § 1446.  This Court has jurisdiction over the FLSA claim based on 28 U.S.C. § 1331, which provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Court held a bench trial on this matter in June 2024.

### FINDINGS OF FACT

Direct Home is a Florida corporation that operated and was headquartered in Hillsborough County, Florida.  Direct Home regularly transacted business in Hillsborough County, Florida, during the relevant period.  Direct Home owned, operated, managed and/or staffed a trucking

related business during the relevant period. Direct Home's annual volume of sales or business exceeded $500,000.00 during the relevant period. As part of its business, Direct Home customarily and regularly purchased and/or transported goods and materials that traveled through interstate commerce. It is clear that Direct Home is subject to the FLSA.

Direct Home formerly employed Plaintiff during the relevant period. Plaintiff was a driver for Direct Home. Direct Home paid its drivers a flat $200 per day for delivery services. Occasionally these days extended well beyond eight hours, but often were shorter than eight. Direct Home's best driver worked an average of twelve (12) hours per day. Also, "specials" of $25.00 were occasionally paid to the drivers for extra work. The "specials" were a flat payment as well. Direct Home did not pay its drivers, including Plaintiff, for any overtime hours worked.

Direct Home used a program called "Dispatch Tracking" to accurately maintain a record of time drivers, including Plaintiff, spent on their routes. Direct Home never used the hours worked by drivers, including Plaintiff, to calculate overtime pay. Direct Home only requested the days worked by drivers, including Plaintiff, and not for the hours the drivers actually worked.

Direct Home, via its principal Eldridge, admitted that, per its own calculations, Plaintiff is owed at least $243.41 in overtime payments.

Eldridge, an individual, is an officer and treasurer of Direct Home. Eldridge, as the former owner and treasurer for Direct Home, ran the operations of the office, oversaw the payroll for Direct Home, signed checks for Direct Home, and oversaw the management for Direct Home. Eldridge hired, or directed his managers to hire drivers, and created the pay scheme of a flat $200.00 per day for drivers regardless of the number of hours worked.

Eldridge had actual knowledge that the drivers, including Plaintiff, were paid a daily flat rate of $200.00 per day regardless of the number of hours worked. Eldridge never evaluated the

2

$200.00 pay structure to confirm it comported with FLSA requirements for flat rate employees. Eldridge was not aware of the statutes and rules governing flat rate payments under the FLSA.

Eldridge, as Direct Home's treasurer, was responsible for implementing the pay structure for drivers, including Plaintiff, of $200.00 per day without overtime pay. Eldridge never used the hours worked by drivers, including Plaintiff, to calculate any overtime pay. When calculating payments for drivers, including Plaintiff, Eldridge only requested for the days worked by drivers, including Plaintiff, and not for the hours the drivers actually worked. Eldridge had access to and monitored all of the reports for Direct Home.

Plaintiff worked as a driver for Direct Home from May 26, 2022, to September 19, 2022. Plaintiff's paystubs from Direct Home never specified that Plaintiff received payments for overtime.

## CONCLUSIONS OF LAW

Under § 207(a)(1) of the FLSA, employers may not require any employees to work more than forty (40) hours per week "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." In the instant case, Defendants admitted that Plaintiff was never paid for any overtime hours worked. As such, Defendants are in violation of the FLSA. Under § 203(d), employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee…"

In the instant case, Direct Home hired Plaintiff as a driver to deliver furniture on its behalf. Direct Home's tracking report confirmed that Plaintiff was employed for approximately seventeen (17) pay periods. As such, Direct Home is liable to Plaintiff as an employer under the FLSA.

Eldridge admitted to being an officer, the treasurer, of Direct Home. Eldridge admitted he ran the operations, oversaw the payroll, and oversaw the management for Direct Home. Eldridge

3

admitted that he ultimately made the decision as to how to compensate the drivers, including Plaintiff. Eldridge did not take sufficient, if any, precautionary measures to ensure the drivers, including Plaintiff, were compensated appropriately under the FLSA. Eldridge was the boss and direct supervisor of Plaintiff. As such, Eldridge personally is liable to Plaintiff as an employer.

Defendants admitted that their employees were engaged in commerce and the handling of goods that moved through interstate commerce, and the annual gross volume of sales for Direct Home exceeded $500,000.00. As such, Defendants meet all of the requirements to be found liable to Plaintiff under the FLSA.

If an employer is found to have violated the FLSA's overtime pay provisions, it is liable in the amount of the proven "unpaid overtime compensation" plus "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The court, however, has discretion to award no liquidated damages or a smaller amount of liquidated damages if the employer can establish that "it acted in good faith . . . on a reasonable belief that its conduct was in compliance with the FLSA." *Ingram v. Passmore*, 175 F. Supp. 3d 1328, 1333 (N.D. Ala. 2016). This requires the employer to show "it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Id*., citing *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991).

Defendants, Plaintiff, and the witnesses all corroborated that Defendants never used the hours worked by the drivers, including Plaintiff, to determine if they were owed any overtime payments. The Court does not find that Defendants operated in bad faith, but the good faith under the Act requires the employer to have reasonable grounds to believe it was in compliance with the FLSA. *Id*.; 29 U.S.C. § 260. However, Defendants were in error in the pay calculation and although Defendants did not believe they were violating state minimum wage laws, their belief

4

was not in the good faith required by the FLSA given the nature of the business involved and the size of the corporate defendant. Ignorance of the FLSA is not good faith sufficient to avoid liquidated damages. As such, Defendants are liable to Plaintiff for liquidated damages under the FLSA.

## OVERTIME CALCULATIONS FOR FLAT RATE EMPLOYEES

Under the FLSA, when employees are paid a flat rate regardless of the hours worked for any given day, the employees are entitled to overtime pay under 29 C.F.R. § 778.112, which states that:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

Courts have determined that flat sums paid to an employee, as opposed to an hourly pay, falls within the purview of § 778.112. *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1317 (S.D. Fla. 2007) ("Plaintiffs state that they were paid extra money, sometimes an hourly rate, for no-shows or cancellations. To the extent that the Plaintiffs were paid a flat amount to compensate for such no-shows or cancellations, such fact does not change the fact that Plaintiffs were paid by the job. However, if Plaintiffs were paid hourly, that could be considered "other form[s] of compensation" under § 778.112.").

In the instant case, Plaintiff was paid at a flat rate of $200.00 per day regardless of the number of hours worked. Plaintiff was also paid a flat rate of at least $25.00 for any additional work, or "specials", he completed while making deliveries, regardless of the number of hours it took Plaintiff to complete the additional work. As such, § 778.112 must be applied when determining Plaintiff's overtime compensation under the FLSA.

5

"Thus, under § 778.112, the Regular Rate is determined by taking an employee's Weekly Pay and dividing it by the total hours that he actually worked. The employee's overtime hourly wage is then *half* of the Regular Rate." *Powell*, 514 F. Supp. 2d at 1312 (emphasis in original). The amount of overtime pay owed to the employee is then determined by multiplying the overtime hourly wage by the number of overtime hours the employee actually worked.

When calculating the regular rate, the total sums for the workweek must include the flat "specials" sums paid to Plaintiff for additional work he completed during his deliveries. *Powell*, 514 F. Supp. at 1317-1318 ("Because § 778.112 applies to the facts of this case, the next step is to calculate the regular rate by totaling the sums received for each job during the workweek and 'dividing by the total hours actually worked.' Thus, each Plaintiff's Regular Rate is equal to the total amount paid for all jobs in a workweek, divided by the total hours spent actually working on Defendants' behalf, i.e. the total number of hours spent driving customers and any additional time spent on tasks which may be found to be compensable.").

Based on Defendants' Exhibit 1 [DN61-1], Dispatch Track Route Summary Report, Plaintiff worked for Direct Home for seventeen (17) pay periods, beginning on May 26, 2022, and ending on September 19, 2022. Throughout the period of his employment, Plaintiff was paid a total of $13,674.00 for 581.08 total hours worked, 34.37 of which were overtime hours. As such, Plaintiff is entitled to an additional $443.21 in overtime pay for the overtime hours worked. The calculation for each individual week is as follows:

| 29 C.F.R. § 778.112 PAYRATE | | | | | | |
|---|---|---|---|---|---|---|
| PAY PERIOD | AMOUNT PAID | TOTAL HOURS | OVERTIME HOURS | REGULAR RATE | OVERTIME RATE | OVERTIME OWED |
| 5/22/22-5/28/22 | $ 525.00 | 32.21 | 0 | $ - | $ - | $ - |
| 5/29/22-6/4/22 | $ 650.00 | 30.53 | 0 | $ - | $ - | $ - |
| 6/5/22-6/11/22 | $ 1,075.00 | 43.76 | 3.76 | $ 24.57 | $ 12.28 | $ 46.18 |

6

| | | | | | | |
|---|---|---|---|---|---|---|
| 6/12/22-6/18/22 | $1,225.00 | 50.05 | 10.05 | $24.48 | $12.24 | $122.99 |
| 6/19/22-6/25/22 | $855.00 | 37.67 | 0 | $ - | $ - | $ - |
| 6/26/22-7/2/22 | $770.00 | 39.9 | 0 | $ - | $ - | $ - |
| 7/3/22-7/9/22 | $625.00 | 28.55 | 0 | $ - | $ - | $ - |
| 7/10/22-7/16/22 | $775.00 | 34.4 | 0 | $ - | $ - | $ - |
| 7/17/22-7/23/22 | $324.00 | 17.38 | 0 | $ - | $ - | $ - |
| 7/31/22-8/6/22 | $650.00 | 29.19 | 0 | $ - | $ - | $ - |
| 8/7/22-8/13/22 | $1,275.00 | 45.05 | 5.05 | $28.30 | $14.15 | $71.46 |
| 8/14/22-8/20/22 | $1,450.00 | 55.51 | 15.51 | $26.12 | $13.06 | $202.57 |
| 8/21/22-8/27/22 | $775.00 | 25.22 | 0 | $ - | $ - | $ - |
| 8/28/22-9/3/22 | $1,000.00 | 32.5 | 0 | $ - | $ - | $ - |
| 9/4/22-9/10/22 | $708.00 | 32.68 | 0 | $ - | $ - | $ - |
| 9/11/22-9/17/22 | $767.00 | 38.48 | 0 | $ - | $ - | $ - |
| 9/18/22-9/24/22 | $225.00 | 8 | 0 | $ - | $ - | $ - |
| **TOTAL** | **$13,674.00** | **581.08** | **34.37** | | | **$443.21** |

As such, Defendants are liable to Plaintiff in the amount of $443.21 in uncompensated overtime wages and $443.21 in liquidated damages for a total of $886.42. The Court will consider Plaintiff's anticipated motion for costs and fees. A final judgment will be entered upon consideration of the costs and fees. Plaintiff's fee application must be detailed. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

**DONE AND ORDERED** at Tampa, Florida, on July 30, 2024.

*/s/ William F. Jung*
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Counsel of record